## MADISON *v.* WIRTZ.

1. LANDLORD AND TENANT—TRAILER COURT.
   Trailer court lessee's right of occupancy includes space in front of trailer for parking car.

2. NEGLIGENCE—BURDEN OF PROOF—TRAILER COURT—ICE—EVIDENCE.
   Plaintiff, lessee of space for trailer and parking space for her car in defendant's trailer court *held,* not to have sustained her burden of proof that defendant had failed to maintain the roadways in the court in a safe condition for the tenants, where testimony shows her injury occurred when she fell on ice while cleaning her windshield on car in parking area over which she, not defendant, had control, and that it would have been useless to have salted the place anyway as it would have washed away.

Appeal from Jackson; Dalton (John C.), J. Submitted April 8, 1964. (Calendar No. 12, Docket No. 50,327.) Decided June 1, 1964.

Case by Violet Madison against Meinrad Wirtz for personal injuries suffered in fall on ice at trailer

REFERENCES FOR POINTS IN HEADNOTES
[1] 32 Am Jur, Landlord and Tenant §§ 164, 165.
[2] 38 Am Jur, Negligence § 285 *et seq.*

park. Directed verdict for defendant. Plaintiff appeals. Affirmed.

*Kelly, Kelly & Kelly* (*Mark W. Kelly,* of counsel), for plaintiff.

*McAuliffe & Harbert* (*J. W. McAuliffe,* of counsel), for defendant.

KELLY, J. Plaintiff, a 60-year-old woman, sought damages for injury received when she slipped on ice and fell beside her automobile, which was parked on property owned by defendant, as she was removing ice from the windshield of her automobile. On motion of defendant, the court at the conclusion of plaintiff's proofs directed the jury to enter a verdict of no cause of action in favor of defendant, on the grounds that the plaintiff had failed to sustain the burden of proof of faulty supervision of the premises on the part of defendant.

Appellant claims the court erred in directing the verdict and, also, in denying plaintiff's motion to set aside the directed verdict and for new trial.

Defendant owned the Coffman Trailer Park, in Jackson county, Michigan, and plaintiff had rented space and had lived in the same trailer during the winters of 1956–1957, 1957–1958, and 1958–1959 up to the time of the accident on February 10, 1959.

Plaintiff in her declaration stated:

"That said trailer court contained a number of sites for the location of house trailers, which sites defendant leased to various tenants, including plaintiff. That said trailer court also contained a central building for laundry and other purposes which defendant maintained and operated. That said house trailer sites and central building were interconnected by roadways which also gave access to the public

highway adjacent to said trailer court. That said roadways were under complete and exclusive possession and control of defendant and were for the use of his tenants, including plaintiff, and members of the public having lawful business in said trailer court.

"That defendant had a duty to maintain said roadways in a safe condition so that his tenants, including plaintiff, could safely make use of said roadways.

"That on, to-wit, the 10th day of February, 1959, and prior thereto, defendant, personally and by and through his agents, servants and employees, carelessly, recklessly and negligently failed to maintain said roadways in a safe condition for the use of his tenants, including plaintiff."

Defendant answered:

"This defendant specifically denies that defendant was in complete and exclusive possession and control of said premises and, on the contrary, alleges that each lessee was in the complete and exclusive possession and control of the premises leased to such lessee and provided for the use of such lessee."

A summary of plaintiff's testimony follows: On Tuesday night, February 9, 1959, being the night before the accident, a cold freezing rain began to fall about 10 p.m., and when plaintiff awoke in the early morning preparing to go to work at a factory where she was a bench inspector, it was still raining and sleeting; observing conditions, plaintiff decided that because she had successfully walked to her car which was parked in front of her trailer during a similar storm and icy condition about 2 weeks previous that she could do so again and put on ice creepers over her galoshes; about 6:30 a.m., February 10th, plaintiff walked from her trailer to the automobile, which she had parked the night before

with the driver's side facing the trailer, and got into the automobile without difficulty; after starting the motor plaintiff got out of the car to scrape the ice off the windshield, and, after cleaning the windshield on the driver's side, she walked around the front of the car to the passenger's side to clean the other half of the windshield; plaintiff did not have any difficulty walking or standing when she got out after starting the motor; it was while hanging onto the car with 1 hand and scraping the windshield with the other that she fell alongside the car, parallel, with her head facing toward the front of the car.

Plaintiff testified she bought her own salt and when it became slippery she would spread the salt to protect herself; that on the Tuesday night before she fell she spread salt on the steps leading up into her trailer, on the sidewalk, and on the area near the driver's side of her car, but did not put salt on the passenger side as it was not her general practice to do so.

When the question was asked plaintiff: "You didn't throw any more salt that morning (of the accident)?" Plaintiff answered, "Well, what was the use? It was raining."

Plaintiff's case consisted of testimony of 1 other witness beside herself, a Mr. Petty, who testified that he had lived in the same trailer park from July, 1958, to August, 1959; that he did not witness plaintiff's actions; that roadways led from the highways to the trailers; that the roadways, including the one in front of plaintiff's trailer "was quite icy and snowy"; that in the center of defendant's trailer property there were buildings and facilities for the tenants for laundry, disposal of garbage, post office, et cetera; that the management kept the snow and ice off the walks to and around these central buildings for the tenants, and around the office, but he did

not see any snow removal from the roadways; that as he remembered it the only place work was done by the management was near and around the service buildings, and anything in addition to this was done by the tenants themselves; that he bought salt and took care of the sidewalk and street in front of his trailer; that there is a parking place in front of each of the trailers where the tenants made it a practice of parking their cars; that he remembered the ice storm before plaintiff's accident and "it had been icy and slippery for quite some time, but it was more so that particular day"; that the road leading out to the highway was slippery, but "if you took it kind of easy it wasn't bad, but if you gas it there a bit you would slip and slide quite bad."

Defendant, contending that the record discloses the accident occurred on premises over which plaintiff had control and not upon a common passageway or public area, states:

"Plaintiff's case is largely based upon the contention that we are concerned with some common passageways or public areas. Such is not the fact here. Plaintiff rented a lot which included the right to use a parking space in front of her lot. This was a parking space provided by the owner to all the tenants in the trailer camp and constituted a part of the premises over which the plaintiff had control. She had continuously exercised control over the whole area, including the parking lot, during all the period of time she lived there and she herself stated that she did not expect the owner to take any action with respect to her property."

The testimony as to plaintiff's control of the premises where the accident occurred is confined to the following testimony of plaintiff:

"Q. A parking space was provided outside the sidewalk in front of your trailer lot?
"A. Yes.

"*Q.* That was a part of what you obtained when you leased the lot, was the privilege of parking outside the sidewalk?

"*A.* You have to have some place to park your car.

"*Q.* That was it, wasn't it?

"*A.* Yes.

"*Q.* It was provided?

"*A.* Yes.

"*Q.* And you used it?

"*A.* Yeah. * * *

"*Q.* You took care of your own salting operations?

"*A.* I did.

"*Q.* You didn't expect anybody else to do that for you?

"*A.* No."

Plaintiff's right of occupancy under the lease was not confined to the space necessary to park the trailer but, also, included the space in front of the trailer where she parked her car. Plaintiff was not injured while she was walking or driving upon defendant's roadways, but was injured as she stood holding onto her car, cleaning the windshield.

In ruling on the motion for directed verdict, the court stated:

"Now, on this question of faulty supervision, at this point in this trial the record shows that management did nothing to alleviate this condition complained of; that is, the icy and slippery road. However, the plaintiff further testified that there was no point in spreading salt at the time the accident happened, because it would have washed away, anyway, and she further testified that she did not expect anyone to salt for her.

"Now, the court feels that on this question of faulty supervision the plaintiff has not sustained the burden of proof as required to be so, and I feel I would be remiss in my duty in not directing a verdict at this time."

The court did not err in directing the verdict. Affirmed. Costs to appellee.

DETHMERS, SOURIS, SMITH, O'HARA, ADAMS, JJ., concurred with KELLY, J.

KAVANAGH, C. J., and BLACK, J., concurred in result.